UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------- X
In re:                                  :  Chapter 11
                                        :
Sea Containers Ltd., *et. al.*,         :  Case No. 06-11156
                                        :
                                        :  Jointly Administered
                      Debtors.          :
                                        :
                                        :
---------------------------------------------------------------- X

**VERIFIED STATEMENT PURSUANT TO
BANKRUPTCY RULE 2019 OF KRAMER LEVIN NAFTALIS & FRANKEL LLP**

THOMAS MOERS MAYER, certifies as follows:

I am an attorney at law and a partner with the law firm of Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"). I am admitted to practice before the Courts of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York. On behalf of Kramer Levin, I hereby provide this verified statement (the "Statement") as required by Bankruptcy Rule 2019 in connection with the chapter 11 cases of Sea Containers Ltd. and its subsidiaries (the "Debtors").

1. Kramer Levin represents clients whose names, addresses, and telephone numbers are listed on the attached Exhibit A (collectively, the "Clients").

2. Kramer Levin, the entity filing this Statement, holds no claims against the Debtors. The Clients hold (i) 10.75% notes due October 15, 2006; (ii) 7.875% notes due February 15, 2008; (iii) 12.5% notes due December 1, 2009; (iv) 10.5% notes due May 15, 2012 issued by Sea Containers Ltd. and (v) various trade claims against one or more of the Debtors (collectively, the "Claims"). Based upon the most recent information provided to us by each of the Clients, the total amount of Claims held by the Clients as of February 21, 2008, is approximately $203,452,000.

3. Beginning on December 19, 2007, each of the Clients asked Kramer Levin to represent its individual interests in this chapter 11 proceeding. Kramer Levin and each Client documented Kramer Levin's retentions in individual retention agreements dated as of January 4, 2008 (a "Retention Agreement").

4. At the time of employment, and at all times forward to the date hereof, neither Kramer Levin, nor any attorney or legal assistant thereof, has at any time during this representation, to the best of my knowledge, acquired, owned, sold or otherwise disposed of any claim against or interest in the Debtors, except to the extent that Kramer Levin or its clients may at some future time seek to have Kramer Levin's fees and disbursements paid by the Debtors' estates pursuant to the Bankruptcy Code.

5. A form of Retention Agreement is attached as Exhibit B. From time to time we have been, and may be, retained by other creditors who wish to support the Clients on one or more discrete issues, without signing a Retention Agreement or pursuant to a different agreement, and we will disclose such additional discrete retentions as they occur.

Dated: New York, New York
February 25, 2008

        KRAMER LEVIN NAFTALIS & FRANKEL LLP

        By: /s/ Thomas Moers Mayer
           Thomas Moers Mayer, Esq.
           Joshua K. Brody, Esq.
           1177 Avenue of the Americas
           New York, New York 10036
           (212) 715-9169

        Attorneys for the Clients

KL2 2539781.5

Exhibit A

**Contrarian Capital Management, LLC**
411 West Putnam Avenue
Greenwich, CT 06830
(203) 862-8200

**J.P. Morgan Securities Inc., Credit Trading Group**
270 Park Avenue
New York, NY 10017
(212) 270-6000

**Post Advisory Group, LLC**
11755 Wilshire Avenue
Suite 1400
Los Angeles, CA 90025
(310) 996-9600

**Sandelman Partners LP**
500 Park Avenue
3rd Floor
New York, NY 10022
(212) 299-7600

**Trilogy Capital LLC**
2 Pickwick Plaza
Greenwich, CT 06830
(203) 971-3400

**Varde Investment Partners, L.P.**
8500 Normandale Lake
Suite 1570
Minneapolis, MN 55437
(952) 893-1554

# Exhibit B

KRAMER  LEVIN  NAFTALIS  &  FRANKEL LLP

As of January 4, 2008

BY EMAIL

To:  Holder of Unsecured Notes Issued by Sea Containers, Ltd.

    Re:    Retention of Kramer Levin as counsel in connection with
             Sea Containers, Ltd. Bankruptcy Case.

Dear Noteholder:

       We are pleased that you, on behalf of yourself and funds and accounts that you manage (collectively, "you") have agreed to retain Kramer Levin Naftalis & Frankel LLP ("Kramer Levin," "us" or "we") as your counsel in connection with your holdings of unsecured notes (the "Notes") issued by Sea Containers Ltd. (the "Company").

       Other entities, on behalf of themselves and their funds and accounts, have retained or will also retain Kramer Levin in connection with their holdings of "Notes" (together with you, the "Noteholder Clients") under retention agreements in substantially the same form as this agreement. A list of the Noteholder Clients is attached as Exhibit A. We may take on additional clients by amending Exhibit A, but only with the consent of Noteholder Clients then holding a majority of all Notes then held by all Noteholder Clients ("Majority Clients").

       We find it useful when representing multiple clients in connection with a matter to set forth the terms of our retention. We ask that you consider the terms set forth in the letter (including those set forth above) and agree as set forth below.

       **1.**    **Scope of Legal Services; Identity of Clients**. You agree to engage Kramer Levin to act as your attorneys and to provide legal services and advice in connection with the Company and its bankruptcy case, including any transactions or proceedings contemplated or related thereto. Other than funds and accounts that you manage, Kramer Levin will not be providing legal advice to, or establishing an attorney-client relationship with, (i) any entity which is wholly or partially owned by you or your funds or accounts or (ii) any entity which owns an interest in you.

       **2.**    **Direction**. Certain Noteholder Clients have agreed and may in the future agree to become restricted ("Restricted Clients"). We will take day-to-day directions from the Restricted Clients. However, we will report regularly to all Noteholder Clients to the extent we can do so without providing non-public information. We will file publicly-available pleadings only after providing drafts to all Noteholder Clients and obtaining authority from Majority

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 2

Clients. Before we seek agreement on any material economic term, and before we file any pleading under seal with respect to any material economic matter, we will alert all Noteholder Clients of the need to seek direction from Majority Clients and provide Noteholder Clients who are not restricted the opportunity to become restricted. We shall use our best efforts to obtain Majority Clients' direction. If such direction is not practicable after such best efforts, we will take direction from the Restricted Clients holding a majority of the Notes held by all Restricted Clients at that time. If you are not a Restricted Client, you agree that Kramer Levin shall not provide you with any non-public information.

        3.    **Information as to Holdings**. In order for Kramer Levin to represent you effectively, we need you to disclose to us (a) the face amount of Notes you hold on the date you sign this letter, (b) the face amount of your holdings of any other debt of the Company or any of its affiliates or the amount of any equity securities or other interests of or in the Company or its affiliates held by you, (c) any changes in your holdings as we from time to time request, and (d) if you sell all holdings in Notes, within one day of such sale. We will base Noteholder Client direction (as described above) and billing (as described below) on the most recent reported holding data, provided that, notwithstanding anything set forth herein, for the period beginning as of the effective date of this engagement and ending February 28, 2008, we will base Noteholder Client billing on the Holdings data provided as of the effective date of this agreement. We will hold information as to your individual holdings confidential and not disclose it unless you consent or we are required to disclose such information by law or court order. We will, however, disclose your identity as a Noteholder Client, and the aggregate amount of Notes held by all Noteholder Clients.

        4.    **Responsible Attorneys**. Thomas Moers Mayer and Matthew J. Williams will have overall responsibility for this representation. Other partners of the firm have expertise in particular areas and may work on this matter from time to time. We will use other attorneys and legal assistants in the office as necessary, based upon the nature of the work and the experience and expertise required.

        5.    **Fees**. In general, our fees are based on the amount of time expended. We charge fees based on the actual time spent by attorneys and other members of the staff who perform services on your matters. Our hourly rates for attorneys and other members of the staff are based on years of experience, specialization in training and practice, and level of professional attainment. These rates are reconsidered and adjusted from time to time, generally on an annual basis in the first month after the New Year. Adjustments for 2008 are to be announced on or about January 14, 2008 and will not exceed 7% using a blended rate. You will be responsible to pay any such adjustments for work performed after the date we notify you of such adjustments. The hourly billing rates of our partners currently range from $565 to $855. Thomas Moers Mayer's billable rate is $795 per hour and Matthew J. Williams' billable rate is $570 per hour; as noted, these are likely to change effective January 1, 2008. The hourly billing rates of our

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

As of January 4, 2008
Page 3

counsel, special counsel and associates currently range from approximately $330 to $895, depending on their range of experience. The hourly billing rates of legal assistants who may work on your matters range from approximately $125 to $240. We may assign such attorneys, whether partners, counsel, special counsel or associates, and legal assistants at our customary billing rates, as we may deem appropriate for proper representation in your matters. We will provide you with monthly bills, prepared and delivered as soon as practical following month-end, indicating time spent by each person and that person's billing rate.

      6.    **Disbursements**. It is often necessary for us to incur reasonable expenses for items such as travel, lodging, meals, long distance or conference telephone calls, courier services and staff overtime. In addition, matters often require costly ancillary services such as photocopying, word processing, secretarial, messenger, and computerized legal research. These items will be separately classified on our statements as "disbursements" and, to the extent applicable, billed subject to the guidelines set forth in Exhibit B. These guidelines are (except where noted) based on those we applied to limit our disbursement charges as counsel to the Official Committee of Unsecured Creditors in the chapter 11 reorganization of Dana Corporation in the United States Bankruptcy Court for the Southern District of New York. (The Company's case is pending in Delaware; we have based Exhibit B on the Dana guidelines because they are more specific and limiting).

      7.    **Method of Payment / Retainer.** We will record our time in accordance with the requirements of the United States Bankruptcy Court for the District of Delaware to facilitate repayment of such fees in the Company's bankruptcy case, either under a plan or with court approval. However, there can be no assurance that such fees will be paid by any third party. Accordingly, you agree to pay your undisputed Pro Rata Share (defined below) of our reasonable fees and expenses billed to all Noteholder Clients as set forth in the confidential fee budget transmitted herewith. We will endeavor to bill on a monthly basis. Each bill will be payable within 30 days of receipt to give you time to review the bill and the time and disbursement records which will accompany it. Should you have questions or objections to any bill, we ask that you raise such questions or objections promptly. To the extent Kramer Levin is successful in seeking reimbursement from the Company for the payment of fees and expenses made by the Noteholder Clients, fees and expenses previously paid by the Noteholder Clients will be reimbursed to the Noteholder Clients. If you fail to timely pay your Pro Rata Share of a bill, we may treat that failure as a termination of our retention; provided however, that you will remain liable for your Pro Rata Share of fees and disbursements incurred through February 28, 2008, and for any period prior to your termination of this Agreement thereafter, so long as such fees and disbursements are both reasonable and within budget. For purposes of this Agreement, your "Pro Rata Share" of fees and expenses for any month shall be calculated using the daily average amount of your reported holdings of Notes during such month divided by the daily weighted average of the holdings of Notes reported by all Noteholder Clients during such month, provided that, for the period beginning as of the effective date of this engagement and ending

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 4

February 28, 2008, "Pro Rata Share" will be determined based upon your holdings of Notes reported as of the effective date of this agreement. You agree that discrepancies between reported holdings and actual holdings on any date will not be grounds to dispute your Pro Rata Share.

8.   **Arbitration**.  Under certain circumstances, you may have a right to arbitrate fee disputes under Part 137 of the Rules of the Chief Administrator of the New York Courts. We will be happy to provide a copy of those rules on request. We work hard to avoid fee disputes, and we will only arbitrate fee matters to the extent we cannot reach an amicable resolution and to the extent required by Part 137. If any Noteholder Client disputes our fees or disbursements, we will notify all Noteholder Clients before agreeing to any reduction in amounts payable by the disputing Noteholder Client. Any dispute as to our fees and disbursements may be resolved by a vote of the Majority Noteholders.

9.   **Conflicts of Interest**.

(a)   If Majority Clients (or, in the limited circumstances as set forth above, Restricted Clients holding a majority of all Notes held by Restricted Clients) direct us to take an action (or to refrain from taking action) and you disagree with such direction, you agree that we may follow such direction. You will not contend or assert that the fact of our following such direction in and of itself constitutes a conflict of interest.

(b)   You may terminate our representation of you at any time. However, if you terminate our representation, you agree that, notwithstanding our prior representation of you, we may continue to represent other Noteholder Clients even if your interests are adverse to those of the Noteholder Clients, except as set forth in 9(g). We will promptly inform each other Noteholder Client of your termination of our representation; conversely, we will promptly inform you if any other Noteholder Client terminates our representation.

(c)   This firm has represented, now represents, and will continue to represent numerous clients, nationally and internationally, over a wide range of industries and businesses in a broad variety of matters. A summary of our current practice areas and the industries in which we represent clients can be found on our web site at www.kramerlevin.com. Conflicts of interest might arise that could deprive existing or prospective clients of the right to use this firm as its counsel. Consequently, as an integral part of the engagement, this letter confirms our mutual agreement that with respect to any potential conflict arising by virtue of our representation of you in connection with the matter described in this letter and not any potential conflicts arising by virtue of this firm's representation of you in another or future matter, the firm may represent current or future clients, whether with respect to counseling, transactional matters, litigation, other adversarial proceedings, or other matters, whether or not on a basis adverse to you or any of your affiliates so long as those matters are not related to our particular work for

1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036-2714   PHONE 212.715.9100   FAX 212.715.8000   WWW.KRAMERLEVIN.COM
ALSO AT 47 AVENUE HOCHE   75008 PARIS FRANCE

KL2 2538229.10

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 5

you. Such matters are referred to collectively as "Permitted Representations." You waive any current or potential conflicts of interest with respect to Permitted Representations arising by virtue of this firm's representation of you in connection with the matter described in this letter and not any current or potential conflicts of interest arising by virtue of this firm's representation of you in another or future matter. In furtherance of this mutual agreement, you agree that you will not for yourself or any other party assert that your retention of Kramer Levin hereunder is a basis for disqualifying Kramer Levin from representing another party in any Permitted Representation, and you agree that any Permitted Representation does not constitute a breach of duty, in each case, to the extent described above in this paragraph (c). A Permitted Representation would include, without limitation, representing another client (a) over which you might be seeking to acquire influence or control, (b) from which you may wish to buy assets, (c) to which you wish to sell assets, (d) which may provide or arrange financing to you, or (e) regarding that client's interest at the time in acquiring influence or control over an entity or property in which you have a similar interest.

(d) As you know, our firm has an active bankruptcy and creditors' rights practice. We may from time to time be retained, and may have already been retained, by other clients to represent their interests in other bankruptcy cases or out-of-court restructurings in which you are or may be a party with interests adverse to such other clients. In addition, a substantial portion of our practice involves representing official committees appointed to represent creditors in chapter 11 reorganizations of businesses in financial distress, including businesses against which you may have claims or in which you may hold an equity interest. You agree that our representation of you in the matters described in this letter shall not, in and of itself, disqualify us from representing other clients (including committees) in such transactions, bankruptcies or restructurings so long as such representation does not involve the commencement or prosecution of any litigation in which you are named as a party adverse to our other clients. The matters referred to in this paragraph 9(d) in which we have disclosed the firm's actions and intentions in representing other clients, even competitors, with respect to adverse interests in bankruptcy cases or out-of-court restructurings, are referred to as "Permitted Restructuring Representations", it being understood that representing parties other than Noteholder Clients in the Company's bankruptcy case is not a Permitted Restructuring Representation. You waive any current or potential conflicts of interest with respect to Permitted Restructuring Representations arising by virtue of this firm's representation of you in connection with the matter described in this letter and not any current or potential conflicts of interest arising by virtue of this firm's representation of you in another or future matter.

(e) You and our firm have reached the foregoing mutual agreement with knowledge that without your waiver and consent the firm might be prohibited by applicable law or The New York Code of Professional Responsibility from representing other current or prospective clients because of the ethical rules governing conflicts of interest. Nevertheless, you expressly waive any claim of conflict of interest on the part of our firm arising from any

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 6

Permitted Representations or Permitted Restructuring Representations to the extent and as described above in paragraphs 9(c) and 9(d), respectively.

(f) With respect to our representation of you in connection with the Company's bankruptcy case, you agree that we may share information relating to the Company with other Noteholder Clients. With respect to Permitted Representations or Permitted Restructuring Representations, we will adhere to our professional obligation not to disclose any confidential information or to use it for another party's benefit without your consent or agreement. With respect to Permitted Representations or Permitted Restructuring Representations, the firm will, at your request, internally screen the lawyers and work product involved in the engagement referred to in this letter from the lawyers and work product involved in any Permitted Representation or any Permitted Restructuring Representation. Provided that the firm acts in this manner, you would not for yourself or any other party assert that our possession of such information, even though it may relate to a matter for which we are representing another client or may be known to someone at our firm working on the matter, (a) is a basis for disqualifying us from representing another of our clients; or (b) constitutes a breach of any duty owed by our firm.

(g) You understand that certain Noteholder Clients may hold claims against the Company in addition to the Notes ("<u>Other Claims</u>"). Notwithstanding anything set forth herein, Kramer Levin shall not, and shall not be obligated to, commence, prosecute, or participate in any litigation or proceeding adverse to any Noteholder Client with respect to Other Claims, provided that (i) to the extent the Majority Clients determine to commence, prosecute, or participate in such litigation with respect to Other Claims, the Majority Clients will engage conflicts counsel to do so, and (ii) to the extent the Majority Clients engage conflicts counsel to commence, prosecute, or participate in litigation involving a Noteholder Client's Other Claim, Kramer Levin agrees that each Noteholder Client (other than the Noteholder Client whose Other Claim is challenged) will be entitled to its Pro Rata Share of a one-time $50,000 credit and/or offset against fees and expenses incurred by Kramer Levin in connection with this engagement.

**10.** **<u>Termination</u>**. You have the right to terminate our representation at any time upon written notice to the firm. We have the same right on written notice to you, subject to applicable provisions of the Code of Professional Responsibility. In the event you terminate our representation of you prior to February 28, 2008, notwithstanding such termination, you agree to pay your Pro Rata Share of fees and expenses incurred through February 28, 2008. If our representation of you is terminated, you agree to take all steps necessary to free us of any obligation to perform further services and we agree to promptly forward to you copies of all relevant files and other documentation relating to the representation, including the prompt execution of any documents necessary to complete our termination of services. You will remain obligated to pay your undisputed Pro Rata Share of our reasonable fees and disbursements paid or incurred on your behalf prior to termination.

1177 AVENUE OF THE AMERICAS    NEW YORK NY 10036-2714    PHONE 212.715.9100    FAX 212.715.8000    WWW.KRAMERLEVIN.COM

ALSO AT 47 AVENUE HOCHE    75008 PARIS FRANCE

KL2 2538229.10

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 7

     **11.** **Advertising and Marketing.** The firm prepares advertising and marketing materials for current and prospective clients. With your permission, we would like to identify and generally describe work we perform for you based on public information. We will not, however, refer to your company by name without your prior approval.

     **12.** **Disclosure of Federal Tax Advice.** The Noteholder Client may disclose to any person, without limitation, advice or materials we provide to the Noteholder Client relating to the United States federal income tax treatment or structure of any transaction (referred to as "Federal Tax Advice"). No such Federal Tax Advice is proprietary or exclusive to the firm. No person other than the Noteholder Client is entitled to rely on the Federal Tax Advice, unless expressly authorized by the firm in writing. The Noteholder Client hereby agrees to inform any other party to whom the Noteholder Client discloses Federal Tax Advice, that such party may not rely on the Federal Tax Advice. This paragraph is intended to avoid the application of a possible reporting requirement to the IRS under Treasury Regulation § 1.6011-4(b)(3); it is not intended to affect the privileged nature of communications between the Noteholder Client and the firm which might be waived by disclosures to third parties.

     **13.** **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws and applicable ethical rules of the State of New York without regard to its conflicts of laws principles.

     This letter is a legal document intended to be binding upon both you and Kramer Levin. If this letter is acceptable, please email us as follows:

> **[NAME OF FUND] on behalf of itself and its managed funds and accounts, as the holder collectively of $ [AGGREGATE PRINCIPAL AMOUNT OF NOTES HELD ], agrees to retain Kramer Levin Naftalis & Frankel LLP as its counsel in connection with Sea Containers' Limited.**

If you have any questions, please call/email as follows:

| Thomas Moers Mayer | Matthew J. Williams |
|---|---|
| 212.715.9169 | 212.715.7713 |
| tmayer@kramerlevin.com | mjwilliams@kramerlevin.com |

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 8

    We are very pleased to have been selected as your counsel, and we look forward to working with you.

Very truly yours,

Kramer Levin Naftalis & Frankel LLP

By:_____
Thomas Moers Mayer

**Name of Institution:** _____
_____
_____

**Signature Line:**    By: _____
**Name:**                    _____
**Title:**                      _____

**Dated:** _____

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 9

## EXHIBIT A

### Client Noteholders

Contrarian Capital Management, LLC

JP Morgan Securities Inc., Credit Trading Group

Post Advisory Group, LLC

Trilogy Capital LLC

Sandelman Partners LP

Varde Investment Partners, L.P.

1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036-2714   PHONE 212.715.9100   FAX 212.715.8000   WWW.KRAMERLEVIN.COM
ALSO AT 47 AVENUE HOCHE   75008 PARIS FRANCE

KL2 2538229.10

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 10

## EXHIBIT B

## DISBURSEMENT GUIDELINES

| | |
|---|---|
| Photocopying | $0.10 per page [Delaware guideline] |
| Cabs/Car Service | Limited to transportation to meetings, airports and late night (after 8pm) travel home; late night fares not to exceed $50 per trip. |
| Meal Charges | Limited to $20 per person; permitted only for late-night meals, client/adversary meetings. |
| Hotel | Hotel charges will not exceed per diem rates customarily paid by estate professionals. |
| Plane Travel | Coach fare, unless upgrade approved by Noteholder Clients. We will exercise our best efforts to use non-refundable fares. |
| Train Travel | Lowest available rate for particular train (coach for Regional, business class for Acela) |
| Travel Time | That portion of travel time not billed to other clients will be billed at 50% unless professional worked during such travel time on this matter. [Delaware guideline] |
| Phone Charges | Billed at direct per-call cost. Where firm has purchased a block of minutes for the general use of its professionals, there will be no charge for the use of such minutes. |
| Binding & Other Document Preparation | No charge for routine binding and document preparation. Special document preparation (e.g., trial exhibits) will be charged at cost. |
| Faxes | No charge |
| Support Staff Overtime | No charge. |

KRAMER LEVIN NAFTALIS & FRANKEL LLP

As of January 4, 2008
Page 11

| Other Charges (e.g., LEXIS, WESTLAW, overnight delivery, postage and messenger services) | Billed at direct cost. |
|---|---|
| Pro-Ration | Late-night cab charges discounted on a pro rata basis so that the client is only charged the fraction of the cab fare equal to the fraction of time that the Kramer Levin employee spent working for the client on that particular day. |